Mr. Justice Montgomery
delivered. the opinion of the Court:
Danenhower filed in the Circuit Court his petition, praying that a writ of certiorari should issue commanding the respondent to certify to that court its proceedings relating to a certain special tax assessment theretofore attempted to be levied upon lot number 6 of square number 556 in this city.
The petition asserted the invalidity of the assessment, and asked that “upon the coming in” of respondent’s return “the said alleged special assessment or the revisions and corrections thereof” might be “quashed and annulled.”
The return was filed in due time, whereupon, on request of counsel for the respective parties, the cause was certified here for hearing in the first instance.-
The material facts are as follows: In pursuance of an act of Congress, approved February 21, 1871, providing for a Board of Public Works in the District of Columbia, and empowering such Board, among other things, to assess upon property adjoining and specially benefitted by local improvements a reasonable proportion of the cost thereof, 16 Stat. at Large, Sec. 37, 426. The legislative assembly of the District of Columbia, on the 10th day of August in the same year, enacted a statute, in Section 1 of which it was declared in substance that whenever any such improvements were so made and completed a statement of the cost should be prepared by the Board and filed in its office, and that “ immediately thereafter an assessment based upon said statement” should be made and collected.
Section 3 of this enactment provided that in case of failure to pay the amount so assessed upon any particular parcel, after due notice, the Board of Public Works should issue a certificate of indebtedness for the amount thereof, which certificate should bear interest at 10 per céntum per annum until paid, and should encumber the property as a lien, and that upon the expiration of a year thereafter the *101 premises might, on the application of the .holder of the certificate,-be sold and deeded to the purchaser.
During the following summer that portion of Third street “ from Indiana avenue to New York avenue in front of [said] square 556,” was graded and otherwise improved.
The entire cost of the work was about $131,000, one-third of which was to be assessed on the property “ fronting along the line of the improvements.”
Lots 5 and 6 of this square both abutted on that portion •of the street so improved.
Mary E. Folien then owned lot 5, and lot 6 was then and ever since has been the property of Mr. Danenhower in fee.
The proportionate share of lot 5 of the assessment to be so laid was $164.50, while that of lot 6 was $358.02, but by mistake these amounts were transposed, and the larger sum was assessed against lot 5 and the smaller against lot 6.
The larger amount has never been paid. And so, on November 1, 1872, lien certificate No. 833 was issued for $358.02, and in which it was declared that this was the amount “assessed upon lot No. 5 in square No. 556.”
During the following month Mrs. Folien, in ignorance of the error in thése assessments, paid the smaller sum, which all concerned supposed to be laid against her lot. June 20, 1874, Congress abolished the Board of Public Works (18 Stat. at Large, 116), and June 11, 1878, the present District Government was established. 20 Stat. at Large, 102.
Five days later Congress passed an act directing the collection of “all assessments for special improvements,” which had been made in pursuance of the assembly act of August, 1871. 20 Stat. at Large, 166.
This last act of Congress provided that “ Upon complaint being made to the Commissioners; within thirty days from the passage of the act, of erroneous or excessive charges, in respect to any of said assessments which remained unpaid,” they [the commissioners] were authorized to “ revise such assessments so complained of and to correct the same,” and *102 that where “certificates of assessments had been issued,” they [the commissioners] should “issue to the holder of such certificate a drawback Certificate for the amount of such erroneous or excessive charges.”
Thereafter and during the year 1878, but at what particular date does not appear, the District Commissioners attempted to revise the assessment upon lot 6, by raising the amount of the erroneous assessment of $164.60 to the sum of $379.32.
In December, 1883, the “Chief of the Special Assessment Division ” in the office of the Commissioners, notified petitioner of the error which had been made in the assessment of the two lots, at the same time leaving with him a bill for this increased amount, with interest at 10 per centum, to be computed from the 1st day of November, 1872. On the 6th day of the following February, this bill not being paid, lien certificate No. 19,977 for the sum of $358.02, “ with interest at the rate of ten per centum per annum from the 1st day of November, A. D. 1872,” was issued and is now outstanding.
Upon this certificate there was written across the face “ issued in lieu of certificate No. 833 recalled as erroneous, in designating the lot therein described as number five.”
The first question, therefore, for our consideration is as to this attempted revision.
Can it be upheld ?
It will be remembered that the act of Congress of June, 1878, authorized the revision and correction of “ excessive or erroneous charges” [assessments] in cases where complaint was made to the Commissioners within thirty days “ from the passage of the act.”
It is not asserted in this case that complaint was ever made by the owner of lot 6, and we think it may be safely assumed that he did not find fault with a levy of $164.50 as “excessive or erroneous,” when it really should have been $358.02.
*103 That which was done, therefore, instead of being a “ revision and correction ” of an “ excessive or erroneous ” assessment, undertaken upon complaint of the owner of the property, was in fact another and a different assessment— an attempt to encumber the property in controversy with a much larger levy which had rested for several years upon another lot and without the request or consent of the owner.
Surely the Statute of 1878 does not admit of such a construction.
It is plain, we think, that this so-called revision was, at least to the extent of the amount, of the increase over the original assessment, a new levy, ultra vires, and void.
If it be said that still the first assessment of f164.50 is valid, and is separable from the amount added, it must be replied that this levy was long ago paid. It was paid as it was assessed, and it was assessed upon lot 6. „
It follows that none of this assessment for which the last-mentioned certificate was issued now rightfully rests upon lot 6, and the proceedings must be quashed.
In reaching this conclusion we have purposely omitted the consideration of the many other interesting questions discussed at the argument.
Judgment accordingly.